# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | NO. 3:05-cr-00209 |
| | ) | |
| WALTER PRENTICE DRAKE | ) | JUDGE CAMPBELL |

## MEMORANDUM AND ORDER

Before the Court is Defendant's Motion for Compassionate Release (Doc. No. 73). The Government filed a Response in opposition (Doc. No. 78), and Defendant filed a Reply (Doc. No. 83).

For the reasons stated below, Defendant's request is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On June 15, 2006, a jury found Walter Prentice Drake guilty being a convicted felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924. After a determination that Drake qualified as an armed career criminal, he was sentenced to a period of 252 months of imprisonment and 5 years of supervised release. (Doc. No. 63). Defendant is currently serving his sentence at FCI Memphis in Tennessee, with a projected release date of February 5, 2023. Defendant states that he was previously designated for release but that potential release dates have been postponed due to the coronavirus. (Doc. No. 73).

The COVID-19 coronavirus pandemic is a national public health emergency.[1] As of December 28, 2020, COVID-19 has killed more than 330,000 Americans and infected almost

---

[1] *See Renewal of Determination that a Public Health Emergency Exists* (Oct. 2, 2020), www.phe.gov/emergency/news/healthactions/phe/Pages/covid-19-2Oct2020.aspx (renewing, effective Oct. 23, 2020, determination that a nationwide public health emergency exists due to the COVID-19 pandemic and has existed since January 27, 2020).

19 million.² Spread of the virus has recently accelerated. In November 2020, there were over 4 million new cases – more than double the number of new cases in the previous month.³ Drake stated that, at the time he filed the motion, that the facility where he is housed, FCI Memphis had three positive cases among inmates and four cases among staff.

The Centers for Disease Control and Prevention ("CDC") advises that individuals with certain underlying health conditions and older adults are at increased risk for severe illness and death if they contract the virus.⁴ The CDC defines "severe illness" as hospitalization, admission to the ICU, intubation or mechanical ventilation, or death.⁵ According to the CDC, "[t]he best way to prevent illness is to avoid being exposed to the virus."⁶

## II. STANDARD OF REVIEW

In December 2018, Congress passed the First Step Act, Section 603 of which transformed the process for compassionate release under Section 3582(c)(1)(A) to allow prisoners to directly petition courts. Until this amendment, compassionate release motions could only be brought by the Director or the Bureau of Prisons, an option that was infrequently exercised.⁷ The compassionate release statute now states in relevant part:

---

² *CDC COVID Data Tracker* (Dec. 28, 2020), http://covid.cdc.gov/covid-data-tracker.

³ Tariro Mzezewa and Sarah Cahalan, *The U.S. Passes 4 Million Cases in November Alone, Doubling October's Tally*, N.Y. TIMES, Nov. 30, 2020, https://www.nytimes.com/2020/11/28/world/us-coronavirus-cases-pass-4-million-for-the-month-of-november-doubling-the-record-set-in-october.html.

⁴ *See* CDC, *People Who Are at Increased Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited Dec. 28, 2020).

⁵ *See* CDC, *Evidence Used to Update the List of Underlying Medical Conditions That Increase a Person's Risk of Severe Illness from COVID-19*, cdc.gov/coronavirus/2019-ncov/need-extra-precautions/evidence-table.html (last visited on Oct. 8, 2020).

⁶ *See* CDC, *How COVID-19 Spreads*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/how-covid-spreads.html. (last visited Oct. 8, 2020).

⁷ The first year after passage of the First Step Act, 145 offenders were granted compassionate release under 18 U.S.C. § 3582(c)(1)(A), a five-fold increase from fiscal year 2018, during which 24 compassionate release motions

2

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction…
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission;

18 U.S.C. § 3582(c)(1)(A).

The requirement that a prisoner exhaust administrative rights to appeal or wait 30 days after the first request to the prison is a mandatory claims processing rule. *U.S. v. Alam*, 960 F.3d 831, 833 (6th Cir. 2020). The Sixth Circuit has considered the exhaustion requirement in the context of the unique circumstances presented by the COVID-19 pandemic and concluded that it "operates as an 'unyielding procedural requirement[]'" and is not subject to equitable exceptions. *Id*. at 834. If a prisoner files an untimely motion for compassionate release, the Court should dismiss the motion without prejudice. *Id*.

The Sixth Circuit has instructed that the statute imposes a three-step test. *United States v. Jones*, No. 20-3701, 2020 WL 6817488, at *6 (6th Cir. Nov. 20, 2020). "At step one, a court must 'find[]' whether 'extraordinary and compelling reasons warrant' a sentence reduction." *Id*. Step two requires the court to "'find[]' whether 'such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission.'" *Id*. Then in step three, the court must consider "any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized

---

were granted. *See* United States Sentencing Commission, The First Step Act of 2018: One Year of Implementation, 46-49 (Aug. 31, 2020). Of the motions granted during the first year, 96 were filed by the offender. *Id*.

by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." *Id*.

In *Jones*, the Sixth Circuit addressed the applicability of the Sentencing Commission policy statement to a motion for compassionate release filed directly with the court by imprisoned persons. *See id*. at *7-9. The Sixth Circuit noted that, since the First Step Act was enacted in 2018, the Sentencing Commission has not amended the policy statement pertaining to reductions in terms of imprisonment under 18 U.S.C. § 3582(c)(1)(A) and the existing policy statement applies only to motions filed by the BOP. *Id*. Finding the existing policy statement "inapplicable" to cases filed by an imprisoned person, *Jones* instructs that in considering a motion for compassionate release filed by an incarcerated person, a court may "skip" step two of the inquiry and has "full discretion to define 'extraordinary and compelling' without consulting the policy statement § 1B1.13." *Id*. at *9.

### III.    ANALYSIS

As an initial matter, the Court finds that Defendant has met the exhaustion requirement of Section 3582(c)(1)(A). Defendant submitted a request to the Warden, which was denied. (Doc. No. 73-1). The Government does not contest that he has exhausted his administrative remedies. (Doc. No. 78).

Defendant seeks compassionate release due to his extreme risk of severe illness or death from COVID-19 due to his underlying medical condition – hypertension – and the heightened risk of contracting COVID-19 in prison. Hypertension has been identified by the CDC as a condition which may put an individual at increased risk for severe illness from COVID-19.[8] The Government disputes that Defendant's diagnosis of "benign essential hypertension" rises to the

---

[8] *See* CDC, *People Who Are at Increased Risk for Severe Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased-risk.html (last visited Dec. 28, 2020).

level of extraordinary and compelling such that the relief sought should be granted. (Doc. No. 78). The Court acknowledges that Defendant's hypertension may increase his risk of severe illness from COVID-19. It is not necessary to determine the relative severity of Defendant's hypertension, nor is the Court equipped to do so. Even if the Court found that extraordinary and compelling reasons existed in this case, the relevant Section 3553(a) factors do not weigh in favor of a reduced sentence.

Section 3553(a) requires the Court to "impose a sentence sufficient, but not greater than necessary" to comply with a number of factors including: the nature and circumstances of the offense and the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; the applicable Sentencing Guidelines range; and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a).

Defendant argues that the factors weigh in favor of his release and that his age and conduct while incarcerated demonstrate that he is unlikely to recidivate. The Government argues that a reduction in sentence is unwarranted in this case, primarily citing the offense conduct and the Defendant's criminal history. The Government also cites Defendant's designation by the BOP as a high risk for recidivism.

*Nature and Circumstances of the Offense*. Defendant was found guilty of being a felon in possession of a firearm. Specifically, Defendant possessed a pump shotgun with a pistol grip in a crowded community center. (PSR ¶¶ 3-6). When officers attempted to question him, he ran. He was apprehended after a pursuit by three Metro Nashville Park Rangers. (*Id.*)

*The Need to Protect the Public and Afford Adequate Deterrence*. At the time of sentencing, Defendant's lengthy criminal history resulted in a Criminal History Category of VI and included the necessary predicate offenses to qualify him as an armed career criminal. (PSR ¶¶ 20, 62). His criminal history includes many violent and non-violent offenses, including aggravated assault and armed robbery, and his conduct has not been deterred by other custody sentences. (PSR).

*Sentencing Guideline Range*. With a total offense level of 33 and a Criminal History Category of VI, Defendant's guideline range was 235 to 293 months. The Court imposed a mid-range sentence, despite the Government's recommendation of a 293-month sentence, to reflect the severity of the conduct, to promote respect for the law, and to deter the defendant from continued criminal conduct, noting his extensive criminal history and conduct while previously incarcerated. (Doc. Nos. 63, 64).

Though Defendant raises understandable concerns based on the COVID-19 pandemic, the Court finds that the Section 3553(a) factors do not support a sentence of "time served." A time-served sentence would particularly undermine the need to afford adequate deterrence, to protect the public from further crimes of the defendant, and to promote respect for the law. Accordingly, Defendant's Motion for Compassionate Release (Doc. No. 73) is **DENIED**.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE

6

Case 3:05-cr-00209   Document 84   Filed 01/04/21   Page 6 of 6 PageID #: 1073